IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DALIO HOLDINGS I, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action Number: 4:18-cv-01882 |
| | § | |
| **WCW HOUSTON PROPERTIES, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

**WCW HOUSTON PROPERTIES, LLC'S  REPLY TO THE PLAINTIFF'S RESPONSE TO WCW'S AMENDED MOTION FOR SUMMARY JUDGMENT**

WCW Houston Properties, LLC ("WCW") files this Reply to Dalio Holdings I, LLC's ("Dalio") Response (the "Response") to WCW's Amended Motion for Summary Judgment.[1]

**A.      There Was No Gap in Service of ASI's Original Petition in State Court.**

In the Response, Dalio argues that WCW's claims are time barred because ASI was not diligent in the service of citation on TRL.[2] This argument fails as there is no gap in service of citation.

On May 25, 2017, ASI filed its Original Petition against TRL in state court (the "Petition") and requested issuance of citation (the "Citation"). *See* Exhibits 1 and 2; *see also* Exhibit 3, ¶ 2.

On June 2, 2017, ASI's counsel picked up the Citation from the Harris County District Clerk. *See* Exhibit 3, ¶ 3.

Between the date ASI filed the Petition and the date it acquired the Citation, ASI's counsel determined that he did not have a current address for TRL. *See* Exhibit 3 ¶ 4. To ensure a proper address, and to minimize the disruption that service might cause the manager of TRL, Ali Choudhri,

---

[1] Defined terms are used in this Reply in the same manner as in WCW's Amended Motion for Summary Judgment.
[2] TRL has already attempted to make this argument in state court. *See* Exhibit 5 attached hereto. The state court rejected this argument. *See* Exhibit 6 attached hereto. Dalio and TRL have the same owner, Ali Choudhri, along with the same counsel. The court should not allow them a second bite at the apple on this argument that was fully litigated by the state court.

ASI's counsel attempted to contact Mr. Choudhri approximately five times over the next three weeks to arrange for Mr. Choudhri to receive service of the Citation. *Id.* Mr. Choudhri did not respond to any of these attempts. *Id.*

When TRL's manager would not respond to attempts to arrange for service, ASI gave the citation to a process server to effect service. *See* Exhibit 3, ¶ 5; *see also* Exhibit 4, ¶¶ 1-2. The process server picked up the Citation from ASI's counsel on June 23, 2017. *See* Exhibit 4*,* ¶ 5. The process server made multiple unsuccessful attempts to serve the Citation on TRL at its last known address. *Id* at ¶ 3.

On June 27, 2018, ASI requested that its process server return the Citation and drafted a letter to the Travis County Constable to arrange for service on TRL's registered agent in Austin, Texas. *See* Exhibit 3-A.  The process server returned the Citation the next day.  *See* Exhibit 4, ¶ 4. On that same date*,* ASI mailed the Citation to the Texas Secretary of State in Austin, Texas for service by the Secretary on the registered agent of TRL. *See* Exhibit 4, ¶ 6.

The Travis County Constable received the Citation on July 3, 2018. *See* Exhibit 2.  The Constable served the Citation on TRL on July 6, 2018.  *Id.*

When the court examines the entire record, there clearly is no gap in ASI's attempts to serve TRL with the Citation. ASI was continuously either seeking to locate TRL or actively attempting service upon it.  Thus, there is no evidence that ASI was anything other than diligent service of the Citation.

**B.    The ASI Note Was Not Automatically Accelerated Due to a Tax Lien Transfer.**

WCW has already responded to Dalio's argument that the ASI Note was automatically accelerated in detail in Section E of its Response to Dalio's Amended Motion for Summary Judgment. WCW adopts and incorporates those arguments in this Reply.

**C.     WCW Has Properly Established its Damages.**

In the Response, Dalio argues that WCW cannot establish damages without expert testimony as to the value of the Property.  Dalio relies on certain Texas cases that provide that the measure of damages in wrongful foreclosure is the difference between the fair market value of the property at the date of foreclosure and the remaining balance due on the indebtedness. Those cases are inapposite as they deal with damages to a property owner, and not a junior lienholder, and thus do not account for the nature of WCW's injury as required by Texas law.

Under Texas law, "actual damages", also called "compensatory damages", are awarded to repair a wrong or to compensate for an injury.  *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013). Within that broad definition are "economic damages" that are intended to compensate a claimant for actual economic or pecuniary injury.  TEX. CIV. PRAC. & REM. CODE § 41.001 (4).

The measure of WCW's economic injury is the full value of its secured claim in the amount of $2,958,911.00 as of the date of that foreclosure with interest continuing to accrue at the contract rate of eighteen percent *per annum*.[3]  Had Dalio not fraudulently fabricated millions of dollars of interest and charges, the Property would have been sold for at least $10,000,000 at the foreclosure auction, which would have paid WCW in full.  Had Dalio not wrongfully excluded ready cash bids as set forth in Section E below, the Property could have sold for $12,000,000.  Instead, Dalio acquired the Property through credit it was not owed, and in so doing, eliminated WCW's secured claim against the Property.  WCW cannot seek payment from TRL as TRL has no other assets that could go toward satisfaction of WCW's claim.  Accordingly, the economic injury that WCW suffered from Dalio's wrongful foreclosure is the full amount of its secured claim.

**D.     Dalio's Claim for a Prepayment Premium is Unenforceable Usury.**

In the Response, Dalio argues that there was no wrongful foreclosure as its secured claim

---

[3] Dalio has not disputed the calculation of WCW's secured claim against TRL.

against TRL was $11,220,482.33.  This amount is based largely on a "prepayment premium".  WCW has provided extensive analysis refuting this calculation in its Response to Dalio's Amended Motion for Summary Judgment, which WCW adopts and incorporates here.  Additionally, the court must reject Dalio's calculation as the alleged "prepayment premium" is unenforceable usury.

Under Texas law, a contract that proposes usurious interest is void as a matter of law and is thus unenforceable. *Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 701 (5th Cir 1991); *Allee v. Benser*, 779 S.W.2d 61, 63 (Tex. 1988); *Tri-County Farmer's Co-op v. Bendele*, 641 S.W.2d 208, 209 n.2 (Tex. 1982).  An instrument which allows for acceleration upon default and provides for collection of unearned interest is usurious if the amount of total interest collected exceeds the allowable rate for the accelerated period of the instrument. *Hettig & Co. v. Union Mutual Life Ins. Co.* 781 F.2d 1141, 1145 (5th Cir. 1986).

Dalio has expressly admitted that the "prepayment premium" was triggered by TRL's default and Dalio's foreclosure, rather than a voluntary prepayment by TRL.  *See* Deposition of Azeemeh Zaheer attached hereto as Exhibit 7, p. 164:9—165;20; *see also* p. 157:6—157:24.  It is therefore subject to a usury analysis.   The Modification Agreement containing the purported prepayment premium was allegedly executed on June 11, 2018 just over two weeks before the foreclosure on July 3, 2018.  Dalio contends it was owed $7,594,004.84 by TRL.  Thus, a year of interest on that amount at the maximum rate allowed by law is $1,366,920.87.[4]  Dalio charged almost three times that amount as a "prepayment premium" in just over a two-week period.  This is unenforceable usury as a matter of law.  Dalio thus drastically overstated its credit bid at the foreclosure auction.

---

[4] Dalio claims unpaid principal due on the IBC Note of $5,929,418.00 and accrued interest of $1,664,586 totaling $7,594,004.84.  Accordingly, interest accruing on this amount at the maximum rate allowed by law of 18% over an entire year is $1,366,930.87 ($7,594,004.84 X .18 = $1,366,920.87).  WCW expressly denies Dalio's claims for accrued interest or a prepayment premium.

E. **The Trustee's Disqualification of Bids from Jean Jabbour was Unreasonable.**

Dalio argues that Wade Williams' refusal to accept cashier's checks totaling $12,000,000 from Jean Jabbour of Jelinis, LLC at the foreclosure auction was a reasonable restriction to ensure timely collection permitted under Texas Civil Practice & Remedies Code § 51.0074. This argument is patently absurd as the checks were bearer instruments that Williams could collect the moment he received them.

Wade Williams has testified that Jabbour brought cashier's checks to the auction that were payable to "cash". *See* Declaration of Wade Williams attached to Dalio's Amended Motion, at ¶ 7. Those checks were not acceptable to Williams, and were thus rejected by him, expressly because they were made payable to "cash" rather than to Williams. *Id.*

This restriction is patently absurd. Under Texas law, cashier's checks are guaranteed funds and consequential damages can be accessed against a financial institution who refuses to honor them. TEX. BUS. & COMM CODE § 3.411; *see also Guaranty Federal Sav. Bank v. Horseshoe Oper. Co.,* 793 S.W.2d 652 (Tex. 1990). A cashier's check made "payable to cash" becomes payable to the bearer. *Id* at § 3.109 (a)(3). A check made payable to bearer is negotiable by mere of transfer of possession alone. *Id* § 3.201(b). Accordingly, Jabbour's cashier's checks were guaranteed funds from a financial institution that would become payable to Williams the moment Jabbour physically gave them to him. They are therefore the closest thing to cash Jabbour could provide other than bills from the United States Treasury. There was therefore no risk of collection. Nor could there be any controversy regarding whether Jabbour could endorse the check to Williams as a transfer of possession was all that was required to do so. Dalio's contention that this was a reasonable restriction is thus entirely divorced from reality. The court should therefore grant WCW summary judgment.

>   Respectfully submitted,
>
>   By: */s/ M. Kevin Powers* .
>   M. Kevin Powers--*Attorney in Charge*
>   State Bar No. 24041715
>   1776 Yorktown, Suite 300
>   Houston, TX 77056
>   (713) 621-0700 (tel)
>   (713) 621-0709 (fax)
>   kevin@porterpowers.com

**OF COUNSEL:**

**PORTER & POWERS, PLLC**
1776 Yorktown, Suite 300
Houston, TX 77056
(713) 621-0700 (tel)
(713) 621-0709 (fax)

>   **ATTORNEYS FOR WCW HOUSTON PROPERTIES, LLC**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served on all parties entitled to receive notice through the court's ECF system on April 23, 2020.

>   */s/ M. Kevin Powers* .
>   M. Kevin Powers